UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVERETT L. WILLIAMS,

       Plaintiff,

v.                                      Case No. 1:14-cv-387
                                      Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on November 15, 1962 (AR 248).[1] He alleged a disability onset date of May 2, 2008 (AR 248). Plaintiff completed the 12th grade and had previous employment as a packager, sandblaster, stocker, and cleaner/janitor (AR 26, 258, 457). He identified his disabling conditions as diabetes and back pain (AR 257). In evaluating plaintiff's claim, the Administrative Law Judge (ALJ) noted:

> The claimant previously received disability benefits on the basis of alcohol abuse. That period of disability and entitlement to benefits ended in January 1997 based on a change in the law. (Ex B7D)
>
> A prior administrative law judge decision dated September 22, 2010 (Ex B1A), later upheld by the Appeals Council (Ex B6A), found the claimant not disabled through the date of that decision.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

(AR 16).[2]  The ALJ then reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 6, 2012 (AR 16-28).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

---

[2] Plaintiff had two previous administrative hearings before ALJ Janis Estrada on March 2, 2010 and July 21, 2010 (AR 34-70).  Neither party has informed the Court of the relevance of the 2010 hearings or whether plaintiff was previously denied benefits.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 2, 2008, and that he met the insured status requirements of the Act through December 30, 2013 (AR 19). At the second step, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; type II diabetes mellitus; hypertension; bilateral lower extremity neuropathy; and history of pancreatitis (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25).

The ALJ decided at the fourth step that:

[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lifting and/or carrying five to ten pounds frequently and 10 pounds occasionally; standing and/or walking four to five hours per eight-hour work day, and unlimited sitting; with no climbing of ropes, ladders, or scaffolds, and less than frequent balancing, crouching, crawling, kneeling, stooping, or reaching overhead; the need to avoid concentrated exposure to vibration, extremes of cold, unprotected heights, and dangerous moving machinery; with the ability to understand, remember, and perform simple routine tasks on a sustained basis with less than frequent changes in workplace expectations or workplace environment.

(AR 21).  The ALJ also found that plaintiff was unable to perform any past relevant work (AR 26).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 27).  Specifically, the ALJ found that in the State of Michigan, plaintiff could perform a total of 6,400 jobs as a sorter, a small parts assembler, or a small parts packager (AR 27).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 2, 2008 (the alleged onset date) through September 6, 2012 (the date of the decision) (AR 27-28).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

### A.   The Commissioner erred at Step Three by erroneously finding that plaintiff is literate.

Plaintiff contends that the ALJ's "implicit finding that the claimant is fully literate is not supported by substantial evidence."  Plaintiff's Brief at p. ID# 665 (docket no. 10).  Whether plaintiff is literate is not an implicit finding.  Rather, it is a question of his educational level. "Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability."  20 C.F.R §§ 404.1564(a) and 416.964(a). The regulations define levels of education as illiteracy, marginal education, limited education, high school education and above, and the inability to communicate in English.  *See* 20 C.F.R. §§ 404.1564(b) and 416.964(b).

Here, the ALJ found that "[t]he claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)" (AR 26).  The ALJ's finding is supported by substantial evidence. In his disability report dated October 20, 2010, plaintiff stated that he attended special education classes, completed the 12th grade, and stated that he can speak

and understand English, read and understand English, and "write more than your name in English" (AR 256-58). Notably, the ALJ observed that plaintiff did not allege any mental impairment, intellectual or otherwise, in the prior claim addressed in September 2010 or in his present application for benefits (AR 20).

At the administrative hearing, plaintiff testified that he attended high school at Walbridge Academy, which he described as an alternative school, where he obtained an equivalency degree (AR 78). It is unclear from plaintiff's school records as to whether he completed the 12th grade or obtained an equivalency degree (AR 247). In either event, plaintiff attained an educational level (i.e., a high school education) which the regulations define as follows:

> High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. §§ 404.1564(b)(4) and 416.964(b)(4). In evaluating educational levels, the regulations recognize that "numerical grade level that you completed in school may not represent your actual educational abilities" which "may be higher or lower." 20 C.F.R. §§ 404.1564(b) and 416.964(b). However, "if there is no other evidence to contradict it," the agency will use the claimant's numerical grade level to determine his or her educational abilities. *Id.*

Although plaintiff has a high school education, he contends that he is illiterate, an educational level which the regulations define as follows:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

6

20 C.F.R. §§ 404.1564(b)(1) and 416. 464(b)(1). In support of this claim, plaintiff testified at the administrative hearing that he cannot read or write, read a newspaper, perform simple math or make change (AR 79, 93). This testimony contradicts plaintiff's educational records, which show that while in high school he received As, Bs and Cs in language arts (e.g., English) and math (AR 247). In addition, plaintiff has a valid driver's license, drives, and worked for many years (77-79, 226-31, 258, 457). In this regard, the ALJ found that plaintiff performed unskilled work in the past, including work as a sandblaster, a packer, a stocker and a cleaner/janitor (AR 26).[3] Based on this record, plaintiff has not established that the ALJ erred in finding that he has at least a high school education and is able to communicate in English (AR 26). Accordingly, plaintiff's claim of error will be denied.

>   **B.    The Commissioner erred at the second half of Step Three by improperly evaluating the opinion of the examining psychologist.**
>
>   **C.    The ALJ failed to properly evaluate whether plaintiff met or equaled Listing 12.05.**

In his remaining claims, plaintiff contends that the ALJ erred in failing to adopt the IQ tests performed by an examining psychologist and in failing to find that plaintiff met requirements for mental retardation under Listing 12.05. These two claims are related, because plaintiff could meet the requirements of Listing 12.05B if the ALJ had adopted the opinion of an examining psychologist.

---

[3] The Court notes that plaintiff told an examining psychologist that his most recent employment was at Key Stone, where he worked for approximately six years (AR 457). Plaintiff did not state that he left this employment due to his illiteracy or other disability. Rather, plaintiff told the psychologist that his job was discontinued in 2009, when his employer "closed the plant" (AR 457).

Plaintiff contends that he meets the requirements of Listing 12.05B and should have been found disabled at Step Three of the sequential evaluation. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05 provides in pertinent part as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*   \*   \*

    B.    A valid verbal, performance, or full scale IQ of 59 or less[.]

Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

In evaluating this alleged mental impairment, the ALJ rejected the conclusions reached by the examining psychologist who determined that plaintiff had verbal, performance and full scale IQ scores of 59, 54 and 52, respectively:

> The claimant made no representations of any mental impairment, intellectual or otherwise, in his prior claim addressed by the September 2010 administrative law judge decision. When he filed the applications now before me, he again made no inference of any mental impairment (Ex B4E). While his current applications were pending at the state agency, his representative arranged for an independent psychological examination (Ex B12F). Richard L. King, Ed.D. assessed the claimant on December 31, 2010. He administered several tests, including a WAIS-III IQ test. This produced IQ scores of Verbal = 59, Performance = 54, and Full-Scale = 52. Dr. King opined that these scores place the claimant in the moderately mentally retarded range of intelligence. Dr. King also noted the claimant suffers from depression, and later noted paranoia possibly related to his alleged sexual orientation as a gay man and his desire to be guarded and careful. Dr. King also provided his assessment of the claimant's mental residual functional capacity, noting a majority of extreme limitations.
>
> I cannot give Dr. King's assessment and opinion any weight. Although in his conclusion Dr. King noted an impression that the claimant's behavior and limitations that he, Dr. King would expect would severely limit the claimant in a work setting, he qualified that with the caveat that he presumed the claimant was not attempting to do poorly. He seemingly overlooked his own observations of unexpected responses and inexplicably wrong answers. The likelihood that the claimant was in fact attempting to do poorly is supported by the fact he has never asserted such an extreme intellectual limitation; he has been successfully employed in substantial gainful activity in the past; and his primary care provider specifically noted the absence of any mental limitation (Ex B5F). The claimant reports he was enrolled in special education. His grade report shows A's, B's, and C's (Ex B1E). Other information indicates that the school he attended for his alleged "special education services" was not a program designed for special needs students, but rather for students with disciplinary problems (Ex B10E). I also note that his past extensive abuse of alcohol could have resulted in some diminished cognitive function, but not mental retardation dating from the developmental period.

9

(AR 20).

Dr. King examined plaintiff on one occasion. A non-treating physician (in this case a non-treating psychologist) is not granted the presumption of controlling weight afforded to a treating physician under 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir.1989). While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007).

In evaluating Dr. King's report, the ALJ noted anomalies in the testing, e.g., plaintiff chose incorrect responses and even when prompted he chose the wrong one; plaintiff was able to perform only 2 of 13 tasks in the Digit Symbol subtest, "even with prompting and repeat instructions" plaintiff had "significant difficulties" in understanding the tasks to be performed; and plaintiff "was unable to answer any of the math questions" (AR 456). In this regard, Dr. King found it "difficult" to understand plaintiff's performance on the IQ tests (AR 456). In addition, the ALJ noted plaintiff's work history, educational record and that the high school he attended was for students with disciplinary problems rather than a special education program (AR 20). Furthermore, the ALJ properly relied on the opinion of plaintiff's treating physician, Eugene Vortia, M.D., whose December 15, 2008 Medical Examination Report for the Michigan Department of Human Services stated that plaintiff had no mental limitations (AR 328). *See Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among the opinions of

treating and examining physicians"). Accordingly, the ALJ's decision not to give any weight to Dr. King's opinion is supported by substantial evidence.

### IV.  CONCLUSION

All of the ALJ's determinations reviewed herein are supported by substantial evidence.  The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  July 6, 2015                                    /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge